ELMER J. MEYER et al., Plaintiffs-Appellees, v. LIZETTA M. C. MARSHALL et al., Defendants-Appellants.

(No. 73-169; ▮▮▮▮▮▮▮▮▮▮)

Fifth District—August 30, 1974.

Rau and Frierdich, of Columbia (C. Glennon Rau and Michael V. Frierdich, of counsel), for appellants.

Tom D. Adams and Floyd E. Crowder, both of Columbia, for appellees.

Mr. PRESIDING JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendants appeal from a permanent injunction issued by the circuit court of Monroe County, preventing defendant from building a new residence pursuant to a building permit issued by the city of Columbia, Illinois. Plaintiffs contended that the building permit violated the zoning ordinance of the city of Columbia and initially obtained a temporary injunction against construction of the house. The circuit court later denied a defense motion to dissolve the temporary injunction and instead issued a permanent injunction and assessed costs, including attorney's fees, against the defendants. We reverse.

Defendant Lizetta Marshall owns property and a residence located on Bottom Road in Columbia, Illinois. The plaintiffs, Elmer and Mathilde Meyer and Judith Crowder, own property in Columbia, adjacent to that of defendant Marshall, separated by a roadway and utility easement granted to plaintiffs by defendant. The Meyers' property lies on Bottom Road with the Crowder property located behind it. Both parcels have access to Bottom Road by way of the easement. All of the property involved in this case is zoned R-6 residential.

Early in January of 1973, defendant Marshall decided to construct a new home on a portion of the property abutting plaintiffs' easement. She hired defendant Schueler Brothers, Inc., to plan and construct the building. The plans called for the house to face east towards defendant Marshall's old house with the rear of the structure facing the properties owned by the plaintiffs. The Columbia Zoning Ordinance provides that in an R-6 area only single-family residences are permitted and each lot is required to have a minimum area of 6500 square feet and a minimum width of 50 feet (Columbia Zoning Ordinance, art. VI, par. 6(c)(1), at 28). At the request of the person in charge of issuing building permits, defendant employed a registered Illinois land surveyor to prepare a plat of the entire Marshall property and a separate legal description of the parcel upon which defendant intended to build, so that both parcels would satisfy the minimum-lot-size requirements. The parcel upon which the new house was to be built measured 63 feet × 154 feet and the remaining parcel, 93 feet × 154 feet. Both parcels met the area requirements for an R-6 zone. Thus, on February 10, 1973, a building permit was issued to defendants by the city of Columbia.

Soon after the permit was issued, plaintiffs commenced suit pursuant to section 11—13—15 of the Illinois Municipal Code (Ill. Rev. Stat. 1971, ch. 24, par. 11—13—15). The complaint alleged that construction of defendant's house would violate the Columbia Zoning Ordinance (art. IV, par. 1(c)(4), at 17, and art. VI, par. 6(D), at 28), and sought a temporary injunction on grounds that permitting the construction would

disturb their peace, quiet, health and comfort and deprive them of the full use and enjoyment of their land. The temporary injunction was granted on the same day the complaint was filed, February 27, 1973, without notice to defendant and without requiring plaintiffs to post bond. The city of Columbia was later allowed to intervene over defendants' objection, and after a trial on all the issues, the trial court permanently enjoined construction of the new house and assessed court costs including attorney's fees against the defendants.

The defendants-appellants have raised three issues on appeal: First, that the building permit was valid because all applicable provisions of the Columbia Zoning Ordinance were complied with; second, that the intervention of the city of Columbia was improper; finally, that the injunction should not have been granted and therefore plaintiffs' attorney's fees should not have been assessed against the defendants; rather, costs including attorney's fees should have been assessed against the plaintiffs.

At the outset, we take judicial notice that plaintiff Judith Crowder has by affidavit sworn that following the issuance of the permanent injunction, defendant Lizetta Marshall conveyed to her sister the parcel upon which she had proposed to construct the new house and subsequently a new building permit was issued by the city of Columbia and another house was constructed on the land. Thus, the issues concerning the validity of the original building permit, the city of Columbia's intervention, and the propriety of the issuance of the temporary and permanent injunctions have all been rendered moot such that no effective relief can be granted by the court regarding these issues. *Harney v. Cahill,* 57 Ill.App.2d 1, 206 N.E.2d 500.

■■■ One issue still remains—the propriety of assessing court costs including attorney's fees against defendants. Ordinarily where the substantive issues involved in the trial court no longer exist, an appellate court will not review the case to determine a right to or liability for costs. (*La Salle National Bank v. City of Chicago,* 3 Ill.2d 375, 121 N.E.2d 486; *Case v. Rewerts,* 15 Ill.App.2d 1, 145 N.E.2d 251; *Collins v. Barry,* 11 Ill.App.2d 119, 136 N.E.2d 597.) The defendants argue notwithstanding the above rule, that if the issuance of the permanent injunction was not warranted by the facts, our refusal to review the action of the trial court would leave defendants wrongfully liable and without a remedy. It should also be noted that while plaintiffs agree that most of the issues raised by this appeal have become moot, they concede that the question of the assessment of costs against the defendants remains unresolved. Under the circumstances, justice requires that we decide the issue. Furthermore, although most of the issues have become moot,

an appellate court has jurisdiction to review the assessment of costs including attorney's fees against a party pursuant to statutory authority when there exists a distinct possibility that the trial court erred in exercising its discretion in a matter of substantial public interest. (*Johnson v. Board of Education,* 79 Ill.App.2d 22, 223 N.E.2d 434; *Voisard v. County of Lake,* 27 Ill.App.2d 365, 169 N.E.2d 805.) It appears to us that the language of the Columbia Zoning Ordinance provisions is amenable to several interpretations, as occurred in the case at bar and thus there exists a substantial public interest in a positive ruling on the meaning of the sections which were involved in this dispute. Other jurisdictions have likewise held that an appellate court may review the decision of a lower court for purposes of deciding the issue of costs despite the fact that the principal issues have been rendered moot. *State ex rel. Treat v. Hammel,* 134 Wis. 61, 114 N.W. 97; *Morrison v. Hess* (Mo. 1921), 231 S.W. 997; *Coker v. Richey,* 104 Ore. 14, 204 P. 947.

▮▮ Turning now to the merits of the case, the crucial issues are whether or not the defendant's building plans violated article IV, paragraph 1(C)(4), and article VI, paragraph 6(D), of the Columbia Zoning Ordinance in that more than one building would be located on one lot and that the proposed lot would meet the minimum size requirements for front, side and rear yards. We believe that the trial court erred in its interpretation of the above provisions by focusing its attention on the way in which the residence was to be facing for a determination of the front, side and rear yards rather than giving effect to the plain meaning of the words of the ordinance. In construing statutes and ordinances, courts may not read into them exceptions the legislature did not see fit to make, or, by forced or subtle constructions, alter the plain meaning of the words employed. (*People ex rel. Pauling v. Misevic,* 32 Ill.2d 11, 203 N.E.2d 393.) Where statutory words are plain and legislative intent manifest, courts are required to give effect to such intention. (*People ex rel. Petty v. Community High School District No. 128,* 50 Ill.App.2d 445, 200 N.E. 609.) Furthermore, zoning ordinances are to be strictly construed in favor of the right of the property owner to the unrestricted use of his property. *Herrington v. County of Peoria,* 11 Ill.App.3d 7, 295 N.E.2d 729; *City of Rockford v. Eisenstein,* 63 Ill.App.2d 128, 211 N.E.2d 130.

The plain meaning of the ordinance is best derived by examining the provisions themselves. Article IV, paragraph 1(C)(4), page 17, of the ordinance states that:

> "Every building hereafter erected or structurally altered shall be located on a lot as herein defined and in no case shall there be more than one (1) main building on one (1) lot * * *."

And in article IV, paragraph 1(C)(5), page 17, it states that:

> "No parcel of land described by metes and bounds or any lot shall hereafter be created which doe not conform and meet the requirements of this ordinance."

"Lot" is defined in article II, paragraph 1(B)(61), page 9, as:

> "A parcel, tract, or area of land accessible by means of a street or place."

The definition goes on to state that:

> "It *may* be a single parcel separately described in a deed or plat which is recorded in the office of the county recorder, or it *may* include parts of or a combination of such parcels, when adjacent to one another and used as one." (Emphasis added.)

Since the defendant lives in an area zoned R-6 residential, the ordinance requires at article IV, paragraph 6(C)(1) that:

> "Every one-family detached dwelling hereafter erected shall be on a lot having an area of not less than sixty-five hundred (6,500) square feet, and a width at the established building line of not less than fifty (50) feet."

Therefore, for a parcel of land to be a "lot", it must be accessible by a street or place and have an area of 6500 square feet. The parcel upon which defendant wanted to build met these "lot" requirements. It had access to Bottom Avenue and the registered land surveyor's description of the parcel measured 63 feet × 154 feet, or 9702 square feet.

Contrary to the plaintiffs' contention, there is no requirement in the Columbia Zoning Ordinance that for a lot to be created, a deed or plat of the area be recorded. Plaintiffs also argue that the Plat Act (Ill. Rev. Stat. 1971, ch. 109, pars. 1—13) requires that a survey be made and recorded whenever an owner of land subdivides it. The Act, however, does not apply and no plat is required where the division is of lots or blocks of less than 1 acre in any recorded subdivision which does not involve any new streets or easements of access. In this case, the defendant's parcel was less than 1 acre in size and its division did not involve any new street or easement of access.

Having thus satisfied the minimum lot-size requirement in an R-6 residential district, the defendant also had to comply with the yard-area requirements. In order to determine what are the front, side and rear yards, the ordinance first requires a determination of the "frontage" and "front lot line." Article II, paragraph 1(B)(47), page 7, of the ordinance defines frontage as:

> "All the property abutting on one (1) side of a street or place between two intersecting streets or places (crossing or terminating) * * *."

Here the "frontage" was all the property abutting Bottom Avenue and the easement roadway. According to article II, paragraph 1(B)(62), page 9, a "corner lot" is a "lot at the junction of and having frontage on two (2) or more intersecting streets"; therefore the Marshall lot was a corner lot. The ordinance defines the "front lot line" of a "corner lot" as the "line separating the narrowest frontage of the lot from the street" (art. II, par. 1(B)(66), p. 10). In the case at bar, the narrowest frontage was that abutting Bottom Avenue, 63 feet, the frontage abutting the easement having a width of 154 feet. Article II, paragraph 1(B)(90), page 12, defines "front yard" as "a yard extending across the full width of the lot * * * the depth of which is the least distance between the front line and the building line." Thus the "front yard" of the Marshall "lot" was the area lying between Bottom Avenue and the side of the proposed building. Pursuant to article II, paragraph 1(B)(91) and (92), page 12, of the ordinance, the "rear yard" is the area lying between the side of the principal building and the rear lot line, and the "side yards" are those lying between the principal building and the side lot lines. The yard-size requirements in an R-6 residential district are set out in article VI, paragraph 6(D), page 28, of the ordinance, as follows:

"No building or structure shall be erected or enlarged unless the following yards are provided and maintained in connection with such building, structure, or enlargement:

1. *Front Yard.* Each lot upon which a dwelling is constructed shall have a front yard of not less than thirty (30) feet.

2. *Side Yard.* On each lot upon which a dwelling is constructed, there shall be a side yard on each side of not less than five (5) feet, or ten (10) percent of the width of the lot, whichever amount is larger, but the side yard need not exceed fifteen (15) feet in width.

3. *Rear Yard.* Every lot or parcel of land upon which a building is constructed shall have a rear yard of not less than thirty (30) feet, or twenty (20) percent of the depth of the lot, whichever amount is larger, but it need not exceed forty-five (45) feet."

The evidence introduced at the trial demonstrated that the yard area requirements were met. The "front yard" was 30 feet, the side yards were 8½ feet and 36½ feet on the east and west, respectively, and the depth of the rear yard was 60 feet.

■■ In summary, the defendant's plans to build a new home on a portion of her property fully satisfied all of the requirements of the Columbia Zoning Ordinance. The issuance of the injunction was against the manifest weight of the evidence and therefore costs including attorney's fees should not have been assessed against the defendants.

■■ The sole remaining issue for our consideration is whether as defendants request, costs including attorney's fees should be assessed against the plaintiffs. The defendants argue that since the plaintiffs brought their action pursuant to section 11—13—15 of the Illinois Municipal Code (Ill. Rev. Stat. 1971, ch. 24, par. 11—13—15) which allows a successful plaintiff to recover attorney's fees and since the Costs Act (Ill. Rev. Stat. 1971, ch. 33, par. 8) would have permitted the defendants to recover like costs if they had been successful at trial, they were entitled to recover costs including attorney's fees against the plaintiffs. But for the error of the trial court in interpreting the Columbia Zoning Ordinance, judgment would have been for defendants. Therefore, we hold that the defendants should be allowed to recover costs, including attorney's fees against the plaintiffs.

The judgment of the trial court is reversed and this case is remanded for proceedings consistent with this opinion.

Reversed and remanded.

CREBS and CARTER, JJ., concur.