# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Bockweg v. Konopiots*, 2013 IL App (1st) 121122

---

| | |
|---|---|
| Appellate Court Caption | THEODOOR BOCKWEG, Plaintiff, v. THOMAS J. KONOPIOTS; NEUHAUS GROUP, LTD., an Illinois Business Corporation; 2217 GROUP LLC, an Illinois LLC; and AA LIBERTY CONSTRUCTION, Defendants (Helen M. Bockweg, Plaintiff-Appellant; Quality Excavation Inc., Defendant-Appellee). |
| District & No. | First District, Fifth Division<br>Docket No. 1-12-1122 |
| Filed | September 27, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's denial of plaintiff's petition for attorney fees and costs in her action to enforce Chicago's excavation ordinance was reversed, since she was entitled to those fees and costs under section 11-13-15 of the Illinois Municipal Code as a result of her success in seeking solely monetary compensation for the damage caused to her home by defendant's violation of the excavation ordinance. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 06-L-8168; the Hon. James M. Varga, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Karbal, Cohen, Economou, Silk & Dunne, LLC, of Chicago (Newton N.
Marshall and Edward Fitzsimmons Dunne, of counsel), for appellant.

Bryce Downey & Lenkov, LLC, of Chicago (Geoffrey A. Bryce and Tina
M. Paries, of counsel), for appellee.

Panel

JUSTICE PALMER delivered the judgment of the court, with opinion.
Justices McBride and Taylor concurred in the judgment and opinion.

## OPINION

¶ 1 Plaintiff Helen Bockweg appeals from an order of the circuit court denying her petition for attorney fees and costs she incurred in pursuing her successful enforcement of the excavation ordinance of the Chicago Municipal Code (Chicago Municipal Code § 13-124-380 *et seq.*) against defendant Quality Excavation, Inc. (Quality). Bockweg argues that the court erred as a matter of law in denying her petition because she was entitled to her costs, including attorney fees, pursuant to section 11-13-15 of the Illinois Municipal Code (65 ILCS 5/11-13-15 (West 2008)). We reverse and remand.

¶ 2                                     Background

¶ 3 This appeal arises from the second amended complaint Bockweg and her husband, Theodoor (plaintiffs), filed against Quality and four other defendants (collectively defendants) in March 2008.[1] Plaintiffs charged defendants with (1) breach of the Illinois Municipal Code and the Chicago Municipal Code and (2) negligence. Only plaintiffs' claim against Quality brought under the Illinois Municipal Code and Chicago Municipal Code is relevant here.

¶ 4 Plaintiffs' complaint alleged that Bockweg was the sole beneficiary of the trust which owned legal title to the property at 2125 North Clifton Avenue in Chicago. Plaintiffs lived in the house on the property. The owners of the property next door to plaintiffs, at 2127 North Clifton Avenue (2127 property), decided to demolish the building on the property and build a new structure. To that end, they hired Quality to perform the excavation of the site. Quality started excavation of the property in April 2006. Plaintiffs' home was within five feet of the excavation site. Shortly after excavation began, the bricks and mortar of the exterior walls of plaintiffs' home began cracking, stone tiles cracked and both exterior and interior

---

[1]The defendants were Thomas J. Konopiots, Neuhaus Group, Ltd., 2217 Group LLC, AA
Liberty Construction and Quality.

foundation and walls shifted. A structural engineer inspected the excavation site and determined that the excavation was not being performed in compliance with the plan and certification approved by the City of Chicago and did not provide the reinforcement and bracing of plaintiffs' property required by the Chicago Municipal Code.

¶ 5    Plaintiffs initially filed suit in 2007 and subsequently filed their second amended complaint in March 2008. They brought their action against Quality under section 11-13-15 of the Illinois Municipal Code (65 ILCS 5/11-13-15 (West 2008)), charging that, while performing excavation work on the 2127 property, Quality violated sections 13-124-380 through 13-124-420 of the Chicago Municipal Code (Chicago Municipal Code § 13-124-380 *et seq.*) (the excavation ordinance). Specifically, plaintiffs charged that Quality violated section 13-124-400 of the excavation ordinance. Section 13-124-400 requires that a neighboring structure within five feet of an excavation must be reinforced or braced in order to prevent sagging, settling, cracking or collapse of the structure's foundation or walls. Chicago Municipal Code § 13-124-400 (amended Nov. 13, 2007).

¶ 6    Plaintiffs charged that the foundation and walls of their home sagged, settled and cracked as a result of Quality's violation of the excavation code and Quality was, therefore, liable for those damages under section 13-124-410 of the ordinance.[2] Plaintiffs also asserted that, because Quality violated the excavation ordinance, it was responsible for payment of plaintiffs' attorney fees as a cost of plaintiffs' litigation pursuant to section 11-13-15 of the Illinois Municipal Code.

¶ 7    Section 11-13-15 of the Illinois Municipal Code permits owners or tenants of real property located within 1,200 feet of any structure or building which violates a local zoning ordinance to file suit to, among other remedies, prevent the unlawful construction or alteration or to "restrain, correct, or abate the violation." 65 ILCS 5/11-13-15 (West 2008). The court deciding a section 11-13-15 action "may issue a restraining order, or a preliminary injunction, as well as a permanent injunction, upon such terms and under such conditions as will do justice and enforce the purposes set forth above." 65 ILCS 5/11-13-15 (West 2008).

¶ 8    Plaintiffs did not seek a restraining order or injunction to force compliance with the excavation ordinance. They sought "compensatory damages to cover the damages caused by *** Quality's violations of the City of Chicago ordinances." They also requested their attorney fees as a cost of litigation to enforce the excavation ordinance. Section 11-13-15 provides for attorney fees as follows:

    "If *** the court finds that the defendant has engaged in any of the foregoing

---

[2]Section 13-124-410 sets forth the "liability for violation" of the excavation ordinance as follows:

    "The owner of the property where excavation takes place and the person performing the work shall be jointly and severally liable for any damage *** caused by sagging, settling, cracking or collapse *** of the foundation or walls of a structure located within five feet of the excavation, due to absent or insufficient reinforcement or bracing, or due to any other act or omission in the performance of the excavation." Chicago Municipal Code § 13-124-410 (amended July 25, 2001).

prohibited activities, then the court shall allow the plaintiff a reasonable sum of money for the services of the plaintiff's attorney. This allowance shall be a part of the costs of the litigation assessed against the defendant, and may be recovered as such." 65 ILCS 5/11-13-15 (West 2008).

¶ 9 Defendants moved to strike plaintiffs' request for attorney fees, arguing that section 11-13-15 of the Illinois Municipal Code applied to suits for injunctive relief and not to actions such as plaintiffs' seeking solely monetary damages. Plaintiffs responded that, if they succeeded in establishing a violation of the excavation ordinance, they were entitled to attorney fees under the express terms of the Illinois Municipal Code, the excavation ordinance and Illinois case law as set forth in *Sampson v. Miglin*, 279 Ill. App. 3d 270 (1996).[3]

¶ 10 On November 23, 2009, the court granted defendants' motion and struck plaintiffs' request for attorney fees. It subsequently denied plaintiffs' motion to reconsider.

¶ 11 On October 3, 2011, plaintiffs filed a motion *in limine* seeking leave to present evidence of attorney fees at trial. Citing section 11-13-15 of Illinois Municipal Code and *Sampson*, they argued that Quality's failure to comply with the excavation ordinance was a "prohibited activity" under section 11-13-15 and plaintiffs were, therefore, entitled to the costs, including attorney fees, they had incurred in prosecuting the violation of the excavation ordinance. Plaintiffs requested that the court allow them to present evidence of their prosecution costs and attorney fees or, alternatively, make an offer of proof. They also requested that the court vacate the trial court's prior ruling striking their prayer for attorney fees without prejudice.

¶ 12 Quality filed a motion *in limine* seeking to exclude evidence of plaintiffs' attorney fees from trial evidence and plaintiffs' claim for damages, arguing that the court had twice before denied plaintiff relief with respect to attorney fees and plaintiffs should be precluded from impermissibly interjecting the same issue into the trial. Although not reflected in the record on appeal, the parties agree that the court reserved ruling on the motions *in limine*, the court never decided the motions and plaintiffs did not present evidence of attorney costs and fees at trial.

¶ 13 From this point forward, the record on appeal contains only documentation regarding the proceedings between Bockweg and Quality. It contains nothing to show what happened below with regard to Bockweg's claims against the other four defendants or coplaintiff Theodoor's claims against Quality and the other four defendants. However, at oral argument, Bockweg's counsel informed this court that coplaintiff was dismissed at trial and Bockweg's claims against the other defendants had been resolved.

¶ 14 On October 12, 2011, the court entered judgment on a jury verdict in favor of Bockweg and against Quality on both the "City of Chicago Excavation Ordinance claim" and the negligence claim. The jury awarded Bockweg $205,000 for the cost of repair.

---

[3]In *Sampson*, the appellate court affirmed an award of attorney fees under section 11-13-15 for costs the plaintiff had incurred in successfully pursuing monetary compensation for damage her building sustained as a result of improper excavation in the neighboring building. *Sampson*, 279 Ill. App. 3d at 280-81.

¶ 15     On November 9, 2011, Bockweg filed a petition for attorney fees and costs against Quality, arguing that she was entitled to be reimbursed her costs and attorney fees under section 11-13-15 of the Illinois Municipal Code and the *Sampson* case and that the court's two prior rulings striking plaintiffs request for fees were "clear error under the law." She adopted and incorporated her motion *in limine* to allow evidence of attorney fees "as support for her entitlement to the payment of her attorneys fees as part of the costs in this matter." Bockweg claimed $249,881.94 in fees and costs.

¶ 16     Quality responded that there had been no change in the law or the facts in the two years since the court first denied the request for attorney fees sufficient to justify granting Bockweg the attorney fees she requested. It argued that Bockweg failed to establish that the two previous rulings by the trial court should be vacated or modified or that she was entitled to attorney fees under section 11-13-15.

¶ 17     On February 28, 2012, the court denied Bockweg's petition for attorney fees and costs, finding that the *Sampson* case was distinguishable. Bockweg filed a notice of appeal from the order on March 27, 2012.

¶ 18                                    Analysis

¶ 19     Bockweg argues on appeal that the court erred as a matter of law when it failed to award her the costs, including attorney fees, that she incurred in her successful prosecution and enforcement of the excavation ordinance. She asserts that the court erred in finding that (a) section 11-13-15 of the Illinois Municipal Code did not apply to her action and, alternatively, (b) she was not entitled to an award of fees under section 11-15-13 for her successful prosecution and enforcement of the excavation ordinance because she had sought compensatory damages rather than injunctive relief to enjoin the proscribed activity.

¶ 20     Section 11-13-15 of Illinois Municipal Code provides as follows:

"In case any building or structure *** is constructed, reconstructed, altered, repaired, converted, or maintained, or *** is used in violation of an ordinance or ordinances adopted under Division 13, 31 or 31.1 of the Illinois Municipal Code, or of any ordinance or other regulation made under the authority conferred thereby, the proper local authorities of the municipality, or any owner or tenant of real property, within 1200 feet in any direction of the property on which the building or structure in question is located who shows that his property or person will be substantially affected by the alleged violation, in addition to other remedies, may institute any appropriate action or proceeding (1) to prevent the unlawful construction, reconstruction, alteration, repair, conversion, maintenance, or use, (2) to prevent the occupancy of the building, structure, or land, (3) to prevent any illegal act, conduct, business, or use in or about the premises, or (4) to restrain, correct, or abate the violation. ***

In any action or proceeding for a purpose mentioned in this section, the court with jurisdiction of such action or proceeding has the power and in its discretion may issue a restraining order, or a preliminary injunction, as well as a permanent injunction, upon such terms and under such conditions as will do justice and enforce the purposes set forth above.

\*\*\*

An owner or tenant need not prove any specific, special or unique damages to himself or his property or any adverse effect upon his property from the alleged violation in order to maintain a suit under the foregoing provisions." 65 ILCS 5/11-13-15 (West 2008).

Section 11-13-15 provides for attorney fees as follows:

"If an owner or tenant files suit hereunder and the court finds that the defendant has engaged in any of the foregoing prohibited activities, then the court shall allow the plaintiff a reasonable sum of money for the services of the plaintiff's attorney. This allowance shall be a part of the costs of the litigation assessed against the defendant, and may be recovered as such." 65 ILCS 5/11-13-15 (West 2008).

¶ 21    Section 11-13-15 grants the state's police powers to enforce zoning and building ordinances to promote the public health, welfare and safety to municipal authorities. *Launius v. Najman*, 129 Ill. App. 3d 498, 502 (1984). It extends this enforcement authority to adjacent landowners or tenants in order "to afford relief to private citizens whose municipal officials are slow or reluctant to act [citation], or where the local authorities' actions are not protective of their interests." *Launius*, 129 Ill. App. 3d at 502. If the complaining adjoining landowner establishes that the defendant violated a municipal ordinance, the granting of attorney fees is mandatory rather than discretionary. *City of Chicago v. Higginbottom*, 219 Ill. App. 3d 602, 616 (1991); *Launius*, 129 Ill. App. 3d at 501.

¶ 22    It is uncontested that Quality performed the excavation in violation of the excavation ordinance, Bockweg is an owner of property within five feet of the excavation and her property was substantially negatively affected by the improper excavation. It is also uncontested that violation of the excavation ordinance is a "prohibited activity" under section 11-13-15, Bockweg's second amended complaint charged Quality under section 11-13-15 with such violation and she won judgment on a jury verdict against Quality on both her "City of Chicago Excavation Ordinance claim" and negligence claim, receiving an award of $205,000 for the cost of repair to her property.

¶ 23    Given that the jury found that Quality violated the excavation ordinance, the jury's verdict necessarily means that it found Quality had engaged in one of the "prohibited activities" outlined in section 11-13-15. Bockweg argues, therefore, that the trial court had no discretion to deny her request for attorney fees because she had met all the prerequisites for application of the section 11-13-15 attorney fee provision and, once such prerequisites were met, the allowance of attorney fees was mandatory.

¶ 24    Quality responds that Bockweg is not entitled to her attorney fees because she did not comply with the requirements of section 11-13-15. Quality argues that, in order to recover her attorney fees, Bockweg would have to (1) file suit under section 11-13-15 to secure compliance with the excavation ordinance and (2) have a "court" find that Quality violated the excavation ordinance. It asserts that Bockweg failed to comply with the first requirement because Bockweg sought only the costs to repair the damage to her property but should have sought injunctive relief to prevent, restrain, correct or abate the lack of bracing affecting her home. It asserts Bockweg failed to comply with the second requirement because a jury rather than a court found Quality liable for violating the ordinance.

¶ 25    We agree with Bockweg that, once she established that Quality failed to properly brace or reinforce her home in violation of the excavation ordinance and she was awarded damages for the violation, there was no doubt that she successfully enforced the ordinance pursuant to section 11-13-15 and was entitled to an award of attorney fees and costs. Relief under section 11-13-15 is not limited to injunctive relief.

¶ 26    Section 11-13-15 provides that a neighboring owner affected by an alleged violation,

"in addition to other remedies, may institute any appropriate action or proceeding (1) to prevent the unlawful construction, reconstruction, alteration, repair, conversion, maintenance, or use, (2) to prevent the occupancy of the building, structure, or land, (3) to prevent any illegal act, conduct, business, or use in or about the premises, or (4) to restrain, *correct*, or abate the violation." (Emphasis added.) 65 ILCS 5/11-13-15 (West 2008).

As the court found in *Sampson v. Miglin*, 279 Ill. App. 3d 270 (1996), attorney fees incurred "to recover damages for past violations of building ordinances constitute[ ] action to *correct* a violation, and for such action, the Code expressly mandates the recovery of attorney fees." (Emphasis added.) *Sampson*, 279 Ill. App. 3d at 280-81.

¶ 27    In *Sampson*, the plaintiff's Chicago apartment building suffered damage as a result of an excavation in the building next door. The excavation was being performed in violation of building ordinances. The plaintiff brought suit, seeking a temporary restraining order and monetary damages. The trial court granted the restraining order and the excavation was brought into compliance with the Chicago city ordinances. The case went to trial on counts charging negligence, violation of building ordinances and violation of the Adjacent Landowners Excavation Protection Act (Ill. Rev. Stat. 1991, ch. 111 1/2, ¶ 3300 *et seq.*). Plaintiff had sued under section 11-13-15 of the Illinois Municipal Code (then Ill. Rev. Stat. 1991, ch. 24, ¶ 11-13-15). The trial court found the defendant violated building ordinances and awarded the plaintiff her attorney fees. *Sampson*, 279 Ill. App. 3d at 278.

¶ 28    On appeal, the defendant challenged the award of attorney fees "for lack of statutory authorization." *Sampson*, 279 Ill. App. 3d at 277. Finding that the plaintiff had brought to light many violations of building ordinances, the appellate court held that she had made a substantial contribution to the prevention and abatement of the violations and the trial court, therefore, had a legal basis for an award of fees. *Sampson*, 279 Ill. App. 3d at 278 (citing *City of Chicago v. Higginbottom*, 219 Ill. App. 3d 602, 607 (1991) ("adjoining property owners must establish, at least, a substantial contribution, independent of the actions of the municipal authorities, to the ultimate success in correcting or preventing violations of the municipal ordinances")).

¶ 29    The defendant then argued that the trial court had no basis for awarding fees for any of the work the plaintiff's attorneys had performed after engineers and architects had brought the construction into full compliance with the building ordinances. The court disagreed because the defendant had begun excavations without properly anchoring the parties' common wall in violation of a building ordinance and had not abated the violation until *after* the plaintiff's building had suffered considerable damage. *Sampson*, 279 Ill. App. 3d at 280. The court held that merely abating the violation would not fulfill the defendant's

responsibilities under section 11-13-15. *Sampson*, 279 Ill. App. 3d at 280. Instead, as the violator of the ordinance, the defendant had either to fully restore his neighbor's property to the condition it was in before the illegal construction caused the damage or to pay for any damages caused by the illegal construction. *Sampson*, 279 Ill. App. 3d at 280.

¶ 30    The *Sampson* court rejected the defendant's argument that the only remedy available under the Illinois Municipal Code was injunctive relief to bring the construction into accord with building ordinances. *Sampson*, 279 Ill. App. 3d at 280-81. The court held that "injunctions can fully abate violations, but they would do nothing to remedy the continuing effects of past violations." *Sampson*, 279 Ill. App. 3d at 280. The court found the defendant's construction of section 11-13-15 rendered the term "correct" as used in the section "superfluous" because:

> " 'In construing a statute, each provision and word should be given a reasonable meaning, and the statute will not be presumed to contain surplusage ***.' *Jensen Disposal Co. v. Town of Warren*, 218 Ill. App. 3d 483, 490 *** (1991). Because the legislature used both 'correct' and 'abate' in the Code, 'it appears that a distinction was intended between the two elements.' *People v. Frieberg*, 147 Ill. 2d 326, 349 *** (1992)." *Sampson*, 279 Ill. App. 3d at 280.

¶ 31    The court held:

> "For 'correct' in the Code to mean anything different from 'abate,' it must mean that the plaintiff may sue to force a defendant to take action to correct the harm caused by a violation, even after the violation is abated. Where correction by full restoration of the property to previolation conditions is not economically feasible, the defendant may need to correct the violation by paying damages. We agree with the trial court's holding that defendant is liable under the Municipal Code for damages needed to correct his past violation of building ordinances, even after the construction no longer violates the ordinances. All of plaintiff's attorneys' work to recover damages for past violations of building ordinances constitutes action to correct a violation, and for such action, the Code expressly mandates the recovery of attorney fees." *Sampson*, 279 Ill. App. 3d at 280-81.

¶ 32    As did the defendant in *Sampson*, Quality began excavation in violation of the requirements of a building ordinance and did not abate that violation until *after* the plaintiff's building had suffered considerable damage. Quality's violation of the ordinance was discovered when Bockweg's home started showing damage from the ongoing excavation. As a result of Bockweg's investigation, a structural engineer hired by the owners of the 2127 property determined that Quality was not performing the excavation according to the plans approved by the city and was not complying with the necessary reinforcement and bracing requirements. Quality then remedied the violations, but Bockweg's home had already been damaged as a result of the violations. No amount of after-the-fact reinforcement or bracing of Bockweg's home in compliance with the excavation ordinance would repair the cracked bricks and mortar, broken tiles or shifting of her foundation and walls that had already occurred.

¶ 33    Quality's belated compliance with the ordinance would prevent further damage to

Bockweg's home but did not remedy the existing damage. In Bockweg's case, as with the *Sampson* plaintiff, to "correct *** the violation" under section 11-13-15 would entail the expenditure of funds to repair her building. Accordingly, Bockweg's section 11-13-15 action seeking compensatory damages for the damage to her home was well within the contemplation of section 11-13-15 and the fact that Bockweg did not seek an injunction does not prevent her from recovering attorney fees under section 11-13-15. *Sampson*, 279 Ill. App. 3d at 280-81.

¶ 34 Further, as Bockweg points out, section 13-124-410 of the excavation ordinance specifically provides that the person performing the excavation work is liable for "any damage *** caused by sagging, settling, cracking or collapse *** due to any other act or omission in the performance of the excavation" (Chicago Municipal Code § 13-124-410 (amended July 25, 2001)).[4] Section 11-13-15 provides for actions to enforce building ordinances and section 13-124-410 of the Chicago Municipal Code is such an ordinance. The section 13-124-410 imposition of damages for violation of the excavation ordinance is entirely consistent with the section 11-13-15 provision entitling a landowner to file an action thereunder to "correct *** the violation" of a building ordinance (65 ILCS 5/11-13-15 (West 2008)).

¶ 35 Quality argues that courts have interpreted section 11-13-15 as authorizing a proceeding in equity to restrain and prevent the violation of the building code ordinance and, although a property owner can assert money damages claims, in order to recover attorney fees, the property owner must have sought and obtained the injunctive relief specified in section 11-13-15. It asserts that *Sampson* does not change this result. Quality acknowledges that the *Sampson* court found the term "correct" as used in section 11-13-15 could, in some circumstances, be interpreted to include the need to correct the past violation of a building ordinance. It argues, however, that the *Sampson* court applied the term "correct" in that case because the plaintiff building owner had sustained damages *after* she sought and obtained injunctive relief to stop and remedy the building ordinance violations, not, as here, where the plaintiff did nothing to try to prevent or abate the violation and instead filed only a claim seeking money damages to "correct" the violation. Quality asserts that section 11-13-15 was not intended as "another way to collect money damages" and, therefore, Bockweg's failure to seek injunctive relief under section 11-13-15 is fatal to her claim for attorney fees.

---

[4]Section 13-124-410 of the excavation ordinance sets forth the "liability for violation" of the ordinance as follows:

"The owner of the property where excavation takes place and the person performing the work shall be jointly and severally liable for any damage, death or injury caused by sagging, settling, cracking or collapse *** of the foundation or walls of a structure located within five feet of the excavation, due to absent or insufficient reinforcement or bracing, or due to any other act or omission in the performance of the excavation. For purposes of this section, 'damage' includes incidental costs such as salvage, relocation and temporary housing of occupants of damaged properties, as well as costs incurred by the city in responding to any sagging, settling, cracking or collapse so caused." Chicago Municipal Code § 13-124-410 (amended July 25, 2001).

¶ 36　　　　Nothing in *Sampson* so limits the court's holding. As Quality points out, in *Sampson*, unlike here, the building owner plaintiff successfully sought both an injunction under section 11-13-15 to enjoin a neighboring construction project and monetary damages resulting from damage to her property caused by the construction. However, the appellate court affirmed the trial court's award of attorney fees on the basis that, although injunctions can fully abate violations, they can do nothing to remedy the continuing effects of past violations. *Sampson*, 279 Ill. App. 3d at 280. The court held that "correct" as used in section 11-13-15 must, therefore, necessarily mean that a plaintiff "can sue to force a defendant to take action to correct the harm caused by a violation, even after the violation is abated," *i.e.*, force the defendant to "correct the violation by paying damages." *Sampson*, 279 Ill. App. 3d at 280. Nothing in the court's decision limits the application of "correct" as used in section 11-13-15 to situations where the plaintiff had sustained damages *after* she sought and obtained injunctive relief. The court held, without limitation, that "[a]ll of plaintiff's attorneys' work to recover damages for past violations of building ordinances constitutes action to correct a violation, and for such action, the Code expressly mandates the recovery of attorney fees." *Sampson*, 279 Ill. App. 3d at 280-81. We agree.

¶ 37　　　　Quality also argues that the court properly denied Bockweg's petition for attorney fees because Bockweg failed to comply with the section 11-13-15 requirement that, for an award of attorney fees, a "court" must find Quality violated the excavation ordinance and, here, a jury found Quality liable for violating the ordinance. To state the obvious, the trial *court* entered judgment on the jury verdict. Thus, as required by section 11-13-15, a "court" entered a finding that Quality violated the ordinance.

¶ 38　　　　Following *Sampson*, we find that Bockweg properly filed an action under section 11-13-15 seeking solely monetary compensation for the damage to her home resulting from Quality's violation of the excavation ordinance and should have been awarded attorney fees under section 11-1-3-15 for her successful enforcement of the ordinance. We reverse the decision of the trial court denying Bockweg's petition for attorney fees under section 11-13-15.

¶ 39　　　　　　　　　　　　　　　　　　Conclusion

¶ 40　　　　For the reasons stated above, we reverse the decision of the trial court denying Bockweg's petition for attorney fees and remand for further proceedings.

¶ 41　　　　Reversed and remanded.